Lee, et al. v. CCS, et al
EXHIBIT
4

To All Concerned, April [illegible]

This is a formal complaint. I am alleging that school personnel in Cumberland County North Carolina are giving staff and parents misinformation concerning the federally and state mandated Child Find process. NC 1501-2.9 Child Find reads as follows:
(c) Other children in child find. Child find must also include-- (1) Children who are **suspected** of being a child with a disability and in need of special education, even though they are advancing from grade to grade.
https://www.dpi.nc.gov/documents/publications/catalog/ec144-policies-governing-services/open

My name is Cynthia Lee. I have a BS in Social Psychology and a MSEd with an emphasis in special education. I am a second grade teacher at Sherwood Park Elementary School, (SWPES), located in Cumberland County, NC; however, I am a licensed EC teacher in NC and I was a licensed special education teacher in Virginia for over fifteen years. In Virginia, I had to execute every part of the special education process. I did the education testing, scored the tests and wrote the reports, I wrote initial IEPs, re-evaluations and exit IEPs. I oversaw the meetings.

With my knowledge of the federal legalities as it pertains to special education and child find, I became very disturbed when I along with other certified staff, during several staff meetings, were told by Principal Shannon Booth, and the other members of the SWPES' SST that in order for a student **suspected** of having a disability, to receive an evaluation to determine the need for special education services, the student must complete the Student Services Team ("SST")/Multi-tiered System of Support ("MTSS") process. Furthermore, I and other certified staff, during multiple staff meetings, were told that if a parent writes a letter requesting evaluation the child is still required to complete the SST/MTSS process prior to being referred for an evaluation. Compounding the issue, Wendy Nelson, (specialist - EC Compliance), stated the same.

This school year, I have three students who I suspect to have disabilities. [redacted], [redacted] and [redacted]. [redacted] has been diagnosed with ADHD and she has a 504 plan. This year, she is repeating second grade. [redacted] repeated Kindergarten. In September, [redacted]'s mother requested an evaluation to determine if he had a disability. Her request was forwarded to Ms. Nelson, who ignored it. [redacted] transferred to my class just before winter break. After reviewing his work samples, I could see that he was well below academically and his report card from his past school reflected the same. I spoke to Ms. Paul, our EC teacher, and she informed me that he had been referred for testing in his previous school but his mother refused testing. I spoke to [redacted]'s mother at length and she stated that she wanted him to be evaluated. After she made her statement, I sent an email to Ms. Nelson and she responded stating that [redacted] had to go through the SST process and be referred to the

EC department, by the SST before they would set up a meeting in order to determine if evaluations were needed.

Although concerned, I went through the entire SST process for the three students. Throughout the process it was well documented that each of my students had suspected disabilities; nonetheless, during our March and April staff meetings, I and other certified staff members were told by Principal Shannon Booth and the school's counselor Ms. Carol Duranceau, that EC referrals could not be made after February 2025. Needless to say, during our 3rd Tier SST meeting, on April 2, 2025, [redacted]'s and [redacted]'s parents were told by Ms. Duranceau that their children could not be referred for evaluation because the cut off date to refer was the end of February. She added that their children would be placed on a "watchlist" to be looked at next school year. On April 3, 2025 [redacted]s SST Tier 3 meeting was held. I could not attend this meeting so the Instructional Coach Julie Grates, presented my information. She and I spoke after the meeting and she let me know that [redacted]'s mother requested him to be held back in second grade as well as an evaluation to see if he had dyslexia. Ms. Grates informed me that [redacted]'s mother was told that there is no evaluation given in order to determine if a child had characteristics of dyslexia and she was also told that he would be placed on a "watchlist" to be looked at next school year. I spoke to the parent at length after her meeting with the SST. She confirmed what Ms. Grates stated.

After the SST denied my parents' right to have an evaluation for their children I asked each to write a letter to request evaluation. I then sent an email to Wendy Nelson to let her know that these parents wanted an evaluation and I also wanted an evaluation for each of them. Additionally, I told Ms. Nelson that all three had gone through the SST process and I reminded her that one of my student's parents requested an evaluation at the beginning of this school year in September. At that point, Ms. Nelson scheduled a meeting for my students' parents. The meetings for [redacted] and [redacted] were on April 24, 2025. During my first meeting, Ms. Nelson told [redacted]'s parents that she did not suspect that he had a disability so she was not going to refer him for an evaluation. She openly chastised the parent and told her that a parent referral did not guarantee an evaluation. Ms. Nelson also reiterated that the referral for evaluation needed to be submitted through the SST. I explained that [redacted] went through the SSTprocess and we both were told that he could not be referred because February 2025 was the cut off for referring students for EC evaluation. The student's mother became very upset and began to cry. Ms. Booth looked through the SST notes and discovered that the notes from his 3rd tier SST meeting were incomplete. She then told the parents that we had to hold another SST meeting in order to complete the process. I told Ms. Booth and Ms. Nelson that the information was given so the child should not be penalized because the note taker did not adequately take notes during the SST meeting.

At that point, I reminded Ms. Nelson that it was a team decision as to whether or not the student would be referred for evaluation. I also stated that the key word was "suspect" and that I suspect that [redacted] has a Specific Learning Disability. After making several calls, Ms. Nelson allowed the referral for evaluation; however, she told the parents that it was a 90 school day window so the testing would not take place until next school year. Ms. Nelson's statements were untrue. [redacted]'s meeting went smoothly, she was easily referred for evaluation; however, Ms. Nelson also told [redacted]'s grandparent that it is 90 school days so the evaluation would not occur this school year. [redacted]'s meeting is scheduled for May 8, 2025.

My Complaint: The information concerning the child find process was falsely disseminated by the representatives of Cumberland County Public School district; specifically, Ms. Booth (principal), Ms. Nelson (EC compliance specialist), and Ms. Duranseau (counselor). The false information that was disseminated to the staff and parents is misleading and goes against the child find laws of this state as well as the federal government. In fact [redacted]'s and [redacted]'s parents requested an evaluation months ago which means that Cumberland County Schools is out of compliance with the 90 day time limit which is mandated by the federal government.

Please see the contents in the below link and read the following located on page 8:

https://www.dpi.nc.gov/documents/ec/dyslexia-topic-brief/download?attachment#:~:text=North%20Carolina%20Public%20Schools%20do%20assess%20students%20for%20word%20level,typical%20of%20students%20with%20dyslexia

**Myth**: North Carolina public schools do not evaluate students for dyslexia.

**Fact**: As part of Child Find obligations under federal law, the NC Public Schools are required to locate and identify children with disabilities. Schools evaluate and identify children as eligible individuals within the disability areas defined by federal law, one of which is Specific Learning Disability(SLD). Dyslexia is recognized as an SLD. Dyslexia is considered a term for reading difficulty at the word level involving the ability to map sounds onto letters in order to read and spell words accurately and automatically. North Carolina Public Schools do assess students for word level reading difficulties and other characteristics typical of students with dyslexia.

Here is the truth. https://legalaidnc.org/topic/education/education-1/special-education/ (See drop downs under Do you believe your student may have disability-related needs that require special education services through an Individualized Education Program (IEP)? "The Law Says" and "The Process".

***The law says:***
Schools have a responsibility under federal law (the IDEA) to identify and serve students who have a disability and who require individualized help to support their disability-related needs (a.k.a. special education services). If a school suspects a student may need special education services, they must contact the parent and begin taking the steps outlined below, which is called "Child Find." Parents who believe their children may have a disability that requires special education services can also request that their student be evaluated to better understand their needs and possible eligibility for extra help through an Individualized Education Program (IEP). These requests from parents should be made in writing. Schools must help parents put their request in writing if needed.

***The Process:***
***RED FLAG: If a disability is suspected, schools **cannot** refuse to evaluate a student simply because they have not completed the Multi-Tiered Systems of Support (MTSS) process. The evaluation process and the MTSS process **can** move forward at the same time if needed.

***RED FLAG: All of the steps above must be completed **within 90 calendar days** from the date that the parent sent the school a written evaluation request or the school referred the student to the IEP Team. The 90 calendar day timeline is firm, and does not stop for holidays, summer break, or school closures.

Most parents and school staff are very naive concerning the child find process so when supervisors as well as specialists make statements, the statements are believable; therefore, it is imperative that all statements are true and all actions are in the best interest of the child. In my case, many of the statements that were made to me and to my parents were not true. It is very concerning that the people in place to disseminate the information are intentionally deceiving the teaching staff as well as the public. In fact and indeed, if I had not intervened, my three students would not have received permission to be evaluated. Most teachers would not have stood up against their superiors to argue for their parents' rights thus I am a fluke. The federal laws that govern child find and EC services are not a fluke, they are mandatory and must be obeyed. The misinformation was given on county as well as school level therefore the injustice must be addressed on both the county as well as the state and federal level. I would like to settle my formal complaint.

To settle my complaint, I ask that CCS and NCDPI intervene as follows:

1. Investigate my complaint and find that Wendy Nelson, Shannon Booth, Carol Duranseau and all other staff members involved, disseminated misinformation, then give each a formal reprimand and all other disciplinary measures available.

2. Develop and at the beginning of each school year, disperse a hard copy fact sheet concerning the child find and EC process for both parents as well as for all certified staff in North Carolina. This fact sheet should have examples of what is needed to pursue EC services. There should be a separate fact sheet for parents/community and for certified staff. The fact sheet for certified staff should have detailed examples of what is needed to support a referral to the EC department. Both fact sheets must let all parents and staff know that anyone who **suspects** that a child has a disability can refer the child to the EC department and the EC department has 90 days to complete the child find process. The fact sheet should include the name and contact information for the NCDPI OEC Parent Liaison, as well as Legal Aid and other advocate groups. The sheet should also be easily accessible online.

3. Mandate that all school districts in North Carolina have an OEC Parent Liaison with the same duties of the NCDPI OEC. This position must be ranked on a supervisory level.

4. Mandate that all NC certified school staff attend a training session either in person or online each school year, that delves into the child find laws, SST/MTSS process and the EC process as well as timelines.

I know that my students' parents are not the only individuals who have been given misinformation. With this in mind, the settlement that I propose will help to undo the illegal mishaps that have been forced upon trusting, caring parents and guardians.

My parents' names and contact information is as follows:

| <u>Student</u> | <u>Parent/Guardian</u> |
| --- | --- |
| [redacted] | [redacted] |

Sincerely, Cynthia Lee
Cynthia Lee [redacted]
2nd Grade Teacher
Sherwood Park Elementary School